Nicholson, C. J.,
 

 delivered the opinion of the Court.
 

 In 1869, Southworth was employed by Robert Scotr., of Boston, to purchase cotton in Arkansas for him. The arrangement ivas made through Thompson, who agreed with Scott to forward orders to Southworth, who was to make purchases and ship the cotton to Scott. The money was to be furnished by Scott. Southworth was to have a commission of $2 for each bale so shipped, and of this commission Thompson was. to have one-half, after deducting the expenses. Thompson was to get one-half of the commissions for forwarding the orders from Scott, and Southworth was to have the other half, for buying and forwarding the cotton. Neither Southworth nor Thompson had any interest in the cotton so purchased and shipped to Scott.
 

 Southworth, under this arrangement, purchased and shipped to Scott about 524 bales, on which he retained the commission of $2 per bale. On the 12th of July, 1869, Southworth wrote, from Salem, Va., to Thompson, in Boston: “My purchases for Mr. Scott were-505 bales — at half commissions, I owe you $505 — say deduct one-third expenses, $100 — $405, for which I enclose cheek on Mr. Scott, who owes a balance to my credit,” etc. The check referred to was received by Thompson, and immediately presented to Scott, who refused payment, because he had no funds to the credit of Southworth, but said that Southworth was indebted
 
 *12
 
 to him. Thompson wrote to Southworth on the 14th. of July, that the draft was not accepted, and that the matter remained in abeyance until his accounts with Scott were adjusted. This letter was received by Southworth, who answered, on the 17th of July, and said that he did not understand how his account with Scott was in
 
 “
 
 abeyance/’ as Scott had rendered him account of sales, showing balance, as named in his last.' There was some delay after Scott’s refusal to accept or pay the draft, produced, as Thompson states, by his expectation that Southworth would remit the amount when informed of Scott’s refusal to pay, when a correspondence ensued for that purpose, but as that failed to bring the money, the draft was again presented to Scott, who again refused payment for the same reasons. The draft was then protested, and sent for collection to Memphis, endorsed to Hartmus, to enable him to collect the same.
 

 In March, 1870, suit was commenced, in the Municipal Court at Memphis, in the name of Thompson, for the use of Hartmus, against. Southworth. The declaration contained three counts: — the first, for goods sold, for money loaned and for money paid out; the second, for money loaned and for money due by account; and the third, on the order or dráft on Scott. The defendant put in pleas to the several counts and the issues were made up.
 

 By consent of the parties a jury was dispensed with, and the case was tried by the Circuit Judge, who gave judgment for the plaintiff, for the amount of the draft, in favor of Thompson, the writ and declaration having
 
 *13
 
 been amended so as to strike out the words “for the use of Hartmus.” From this judgment Southworth has appealed in error.
 

 Several objections to an affirmance of the judgment are relied on by the plaintiff in error, which it is proper to notice.
 

 1. It is insisted that Thompson and Southworth were partners, and that until the partnership was closed, one partner could not sue the other at law for his portion of the profits. The. first answer to this point is, that the arrangement between Thompson and South-worth did not constitute them partners. The contract for the purchase of the cotton was between Scott and Southworth, by which Southworth was to be paid $2 on each bale purchased. In consideration that Thompson had procured Scott to make the arrangement with Southworth, as compensation to him for his service, Southworth agreed to divide his commissions with him, after his expenses were deducted. By this agreement, Thompson procured an interest in or control over the purchasing of cotton for Scott, in which Southworth was engaged, This did not make them partners. Story on Part., 71 and note. But if there was a partnership, when Southworth fixed the amount that he was owing Thompson, and wrote to him stating the result, and Thompson acquiesced in the result, this was a settlement of the partnership which would authorize Thompson to sue in a court of law for the amount so fixed. Nor could Thompson’s right to sue for this amount be in any way affected by reason of any unsettled matters between Southworth and Scott,
 
 *14
 
 in which Thompson had no interest. Thompson’s compensation was not dependent upon Southworth’s fidelity or skill in fulfilling his contract with Scott.
 

 2. It is next objected, that the check or draft was endorsed to Hartmus, and therefore that Thompson could not bring suit in his own name, either upon the check or draft, or upon the original consideration. As the draft was endorsed to Hartmus, the suit was erroneously brought in the name of Thompson for the use of Hartmus. But the proof shows that the draft was in fact the property of Thompson, and that the endorsement was made to enable Hartmus to make collection. Upon discovering the error, the declaration was amended, so that the suit then stood in the name of Thompson. As the check was the property of Thompson, he had the right to strike out the endorsement to Hartmus, and proceed in his own name, either upon the draft, or the original consideration, provided the draft was not so received and treated as to be an extinguishment of the original indebtedness. 7 Yer., 477; 2 Hum., 345.
 

 3. But it is objected, that South worth was released from the original indebtedness, in consequence of the acceptance by Thompson of the draft as a payment, and therefore that he has no remedy on the original indebtedness. And further, that he has no remedy on the draft, because of his laches in presenting it for payment and having it protested for non-payment. It is insisted for plaintiff in error, that the paper in question is a foreign bill of exchange, and, therefore, that the drawer has a right to claim his discharge
 
 *15
 
 from liability, in consequence of the failure of Thompson to pursue the requirements in the commercial law, in presenting it for payment and having it protested. The paper is as follows:
 

 “$405. Salem, Ya., July 10th, 1869.
 

 “
 
 Please pay Edwin Thompson, or order, four hundred and five dollars, and charge to account.
 

 Your friend,
 

 To Robert Scott, Boston, Mass.
 
 W.
 
 S. Southworth.”
 

 If it be conceded that this paper is to be regarded as a bill of exchange, as no time of payment is fixed, it is payable on demand. It was therefore incumbent on Thompson, within a reasonable time after receiving it, to present it to Scott for payment. Chitty on Bills,
 
 377.
 
 The proof is, that the draft was enclosed in a letter, dated at Salem, Va., on the 12th of July, and that on the 17th of July, Southworth was notified by Thompson, that the bill had been presented for payment and that payment had been refused. It is manifest that proper diligence was used in making demand and giving notice of non-payment.
 

 But the proof shows further, that when the bill was presented, Scott refused payment, upon the ground that he had no funds of Southworth in his hands. On the contrary, while he admitted that he was owing South-worth $592 on account of balance on 38 bales of cotton, yet he insisted that Southworth was owing him more than two thousand dollars, on account of cotton not delivered, and on account of deficiency in the quality of cotton that was delivered. On account of this issue between them, Thompson advised Southworth
 
 *16
 
 to come on to Boston and settle the matter with Scott; and Southworth made the impression on Thompson that he was coming soon to Boston, and on that account Thompson held up the bill, until he found South-worth was not coming, and then he proceeded to have the bill protested preparatory to enforcing collection.
 

 These facts relieve Thompson of any charge of laches, and show a satisfactory reason for his delay in taking steps to enforce his claim. It would be unreasonable to suppose, that he received and held the bill as a payment and satisfaction of his claim, when he was notified by Scott that he had no funds of Southworth, and that the bill would not be paid. But we think the fair inference is, that he expected Southworth to come to Boston, when, upon his settlement with Scott, his claim would be satisfied. It is clear that Southworth can complain of no injury from the conduct of Thompson, as he notified him promptly of the reasons of Scott for refusing payment, and advised him to come to Boston and arrange the difficulty.
 

 4. The only remaining question to be determined is, was the indebtedness of Southworth to Thompson extinguished by his acceptance of the draft on Scott? It was held in
 
 Fowler
 
 v.
 
 Richardson,
 
 3 Sneed, 508, that the execution and receipt of a note for an account will extinguish it,
 
 if so intended by the parties.
 
 It is said by Mr. Chitty, in his work on Bills, at p. 173, (note), that it is held in the courts of the United States and in the courts of most of the States, that ‘‘the giving of a negotiable promissory note is not to be regarded as payment of the demand which is the
 
 *17
 
 consideration of it, unless it is so expressly agreed.” But in Massachusetts the giving a promissory note is held to be
 
 prima facie
 
 evidence of payment of the demand which is the consideration of it, but liable to be rebutted by circumstances showing a different intent. 10 Pick., 525; 4 Mason, 142; 4 Pick., 225; 6 Metcalf, 127. And if the note of a third person is taken in payment of a debt, it operates as a discharge of the debt. 7 Mass., 286. But it is not until a bill has been accepted that the drawee is responsible as the maker of a promissory note. In the present case there is no proof of any agreement to take the bill in payment, nor any proof from which it can be reasonably inferred that Thompson ever received the bill as payment of his claim; and as the bill was not accepted by Scott, it could not operate as a promissory note of a third party. The most that could be inferred from his conduct is, that he was willing to hold the bill as a conditional payment, until he became satisfied that it would not be available. When he was satisfied of this, he had a right to enforce payment, either upon his original claim or upon the bill.
 

 We are therefore of opinion that there is no error in the judgment below, and affirm it.